## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **STATE BANK OF TEXAS,** | ) | |
| | ) | |
| **Plaintiff and Counterclaim** | ) | |
| **Defendant,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **v.** | ) | **NO. 1:09-CV-1494-RLV** |
| | ) | |
| **MUKESH C. PATEL and** | ) | |
| **RAJESH C. PATEL,** | ) | |
| | ) | |
| **Defendants/Guarantors and** | ) | |
| **Counterclaimants.** | ) | |
| _____ | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56 and in accordance with L.R. 56.1, Plaintiff State Bank of Texas ("SBT") submits this brief in support of its Motion for Summary Judgment.  Without dispute, Plaintiff holds a $10.5 million Note personally guaranteed by Defendants that has been in default for more than one year. Accordingly, Plaintiff is entitled to judgment against each Defendant, jointly and severally, for the total, outstanding guaranteed indebtedness and statutory attorneys' fees (totaling $9,780,408.10, plus $978,065.81 in attorneys' fees as of January 21, 2010 and accruing per diem interest of $2,175.66).

Defendants' misguided tortious interference counterclaim fails both as a matter of law and fact.  First, the counterclaim is based on a wholly false premise -- that Plaintiff outbid Defendants' company for the defaulted Note.  In fact, Defendants' company placed no bid.  Second and independently, the counterclaim fails as a matter of law because it cannot be based on Plaintiff's lawful pursuit of process to enforce the subject guaranties.  For the reasons set forth more fully below, this Court should grant summary judgment in favor of Plaintiff enforcing the subject guaranties, enter a judgment against each Defendant jointly and severally and dismiss with prejudice Defendants' counterclaim.

## II.    STATEMENT OF MATERIAL UNDISPUTED FACTS

### A.    Defendants Guaranteed Diplomat's $10.5 Million Loan

Diplomat Construction, Inc. ("Diplomat") and Integrity Bank ("Integrity") entered into a certain Note dated January 16, 2002 (the "Note"), pursuant to which Diplomat agreed to pay Integrity the sum of Ten Million Five Hundred Thousand and 00/100 Dollars ($10,500,000.00) subject to certain terms and conditions contained therein.  (Compl. ¶ 6; Answer ¶ 6; Affidavit of Sushil Patel ("S. Patel Aff."), attached hereto as Exhibit A, ¶ 3.)  Diplomat and Integrity also entered into a certain Deed to Secure Debt and Security Agreement dated January 16, 2002 (the "Security Deed"), recorded at Deed Book 31728, Page 25, Records of Fulton County, Georgia.  (Compl.

¶ 7; Answer ¶ 7;  S. Patel Aff. ¶ 4.)  Defendants admit that Plaintiff attached true and correct copies of the Note and Security Deed to its Complaint as Exhibits A and B. (Answer ¶¶ 6, 7.)

As part of the transaction between Diplomat and Integrity, Diplomat principals[1] Rajesh C. Patel ("R.C. Patel") and Mukesh C. Patel ("Mike Patel") (collectively "Guarantors") executed personal guaranties in which each Guarantor personally guaranteed performance by Diplomat under the terms of the Note and loan documents and personally guaranteed payment of Diplomat's indebtedness to Integrity (the "Guaranties").  (Compl. ¶ 8; Answer ¶ 8; S. Patel Aff. ¶ 5.)  Guarantors admit that SBT attached true and correct copies of the Guaranties to its Complaint as Exhibits C and D.  (Answer ¶ 8.)  In the Guaranties, Guarantors:

> absolutely and unconditionally (i) guarantee[ ] unto Lender the full and timely payment of the Loans and all accrued interest, principal and other sums, including court costs and reasonable attorneys' fees incurred, to become due Lender under the Notes or Security Documents . . . as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, and the full and timely satisfaction and performance of each and all of the Obligations irrespective of the validity, regularity or enforceability of the Notes or Security Documents;

---

[1]   R.C. Patel is Diplomat's Chief Executive Officer, Chief Financial Officer and Secretary and operates Diplomat with his brother and "business partner" Mike Patel. (Deposition Transcript of Rajesh C. Patel ("R.C. Patel Depo."), relevant excerpts attached hereto as Exhibit B, 6, 20, and Exs. 4 and 21 attached thereto.)  The original sealed transcript for Rajesh C. Patel's deposition has been filed with the Court.

and (ii) agree[ ] with Lender to pay to Lender (x) immediately after Lender notifies Guarantor of Borrower's failure to pay the Indebtedness, or any portion thereof, at maturity (whether by acceleration or otherwise) and at the place specified in the Notes for payment, the full amount of the unpaid indebtedness and (y) Lender's reasonable attorneys' fees and all court costs incurred by Lender in enforcing or protecting any of Lender's rights, remedies or recourses hereunder.

(Guaranties ¶ I.A., attached as Exhibits C and D to the Complaint.)   The Note, Security Deed, and Guaranties are hereafter referred to as the "Loan Documents."

### B. Plaintiff Purchased Diplomat's Loan at FDIC Auction.

In August 2008, the Federal Deposit Insurance Corporation ("FDIC") assumed as receiver Integrity's interests in the Loan Documents.  (Am. Countercl. ¶ 3; R.C. Patel Depo. 47.)  In letters dated October 23, 2008, the FDIC accelerated the maturity of all principal, interest, and other sums due and payable under the Note and demanded that Guarantors pay such indebtedness pursuant to the Guaranties (the "FDIC Demand Letters").  (Compl. ¶ 10; Answer ¶ 10.)

Through the FDIC's loan sale advisor, Debt Exchange, Inc. ("DebtX"), the FDIC auctioned Integrity's interest in the Loan Documents.  (Am. Countercl. ¶ 4; R.C. Patel Depo. 47.)  The auction for Integrity's interest in the Loan Documents was open to "anybody."  (R.C. Patel Depo. 127.)   On or about December 2, 2008, SBT purchased Integrity's interests in the Loan Documents from the FDIC after submitting

through DebtX the winning bid. (S. Patel Aff. ¶ 7;  Affidavit of Chan Patel ("C. Patel Aff.), attached hereto as Exhibit C, ¶ 4.)

Guarantors' counterclaim is premised directly on the assertion that SBT <u>outbid</u> Diplomat in the auction for Integrity's interest in the Loan Documents.  (Am. Countercl. ¶¶ 32-34.)  This premise is false.  Diplomat did <u>not</u> submit a bid to the FDIC to purchase Integrity's interest in the Loan Documents.  (C. Patel Aff. ¶¶ 3-4, Ex. 1.)

Further, Guarantors' contention that SBT used confidential information to make its winning bid is untrue.  There has never been a confidentiality agreement between SBT and Diplomat.  (R.C. Patel Depo. 123-124.)  Prior to SBT's purchase of Integrity's interests in the Loan Documents, SBT and Diplomat never had a relationship.  (<u>Id.</u> 87, 123-124.)  The only previous contact between SBT and Diplomat consisted of one short telephone call and three emails reflecting Diplomat's request for financing to submit a bid on Integrity's interest in the Loan Documents and SBT's denial of this request.  (<u>Id</u>. 87, 90.)  Further, the alleged "confidential information" relayed by Diplomat to SBT -- information regarding the Note and knowledge of Diplomat's business plan to change the collateral for the Note from a Red Roof Inn to a Holiday Inn Express -- was not "confidential" and was accessible to

anyone who wanted to place a bid through DebtX on Integrity's interests in the Loan Documents.  (Id. 72-73, 85-86, 117-119.)

### C.   Guarantors' Liability for Diplomat's Defaulted Loan

SBT is the current owner and holder of all of the Loan Documents.  (S. Patel Aff. at ¶ 8.)  Failure to make timely payments on the indebtedness and a bankruptcy filing by Diplomat are specifically identified as Events of Default in the Security Deed.  (Security Deed ¶¶ 6.1 and 6.5, attached as Exhibit B to the Complaint.)

Events of Default under (and as defined in) the Loan Documents have occurred and have continued for more than one year as a result of, among other things, Diplomat's failure to make timely payments under the Note and Diplomat's filing of the bankruptcy proceeding styled In re Diplomat Construction, Inc., Case No. 09-68613, in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.  (S. Patel Aff. ¶ 6.)

Guarantors received numerous written demands to pay the defaulted Diplomat debt and in each demand Guarantors were notified pursuant to O.C.G.A. § 13-1-11, that, in the event that they failed to timely pay the indebtedness under the Loan Documents, they would be responsible for costs and attorneys' fees.  (Compl. Ex. F, Ex. G.)  The most recent such demand was made on November 30, 2009.  (S. Patel

Aff. ¶ 12, Ex. 1.)  Despite these demands, Guarantors have made no payments to satisfy or reduce their Guaranty obligations.  (Id. ¶ 9.)

As of January 21, 2010, the principal and accrued interest owed under the Loan Documents totals $9,780,408,10.  (S. Patel Aff. ¶ 11.)  This debt continues to accrue interest at the rate of $2,175.66 per diem.  (Id.)  Pursuant to the formula set forth in O.C.G.A. § 13-1-11, statutory attorneys fees on the accrued, unpaid Diplomat debt calculated as 15% of the $500 of indebtedness and 10% thereafter, as of January 21, 2010, total $978,065.81.  (Id. ¶ 13.)

### D.  Guarantors' Tortious Interference Claim.

Guarantors' misplaced counterclaim hypothesizes that, after SBT "surreptitiously" outbid Diplomat "by no more than Twenty Thousand ($20,000.00)" to obtain the Diplomat Loan, SBT initiated foreclosure action against Diplomat and enforcement of the Guaranties.  (Am. Compl. ¶¶  34, 38, 39.)  More particularly, Guarantors contend that SBT's  pursuit of this civil action has caused third-party lenders not to enter into business relationships with them.  (Am. Countercl. ¶ 40; R.C. Patel Depo. at 112-115.)[2]

---

[2]     R.C. Patel testified:

"Q: Okay.  Paragraph 33, you say State Bank of Texas's actions ultimately caused third parties not to enter into business relationships with the Patels.  What

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Summary Judgment Standard.

Federal Rule of Civil Procedure 56(c) provides that the judgment requested should be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee's note). The Court's analysis ends "where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law."  Great Lakes v. Miller, 957 F.2d 1575, 1578 (11th Cir. 1992) (citations omitted).

In general, lawsuits to enforce negotiable instruments, like guaranties, are well-suited for disposition on summary judgment.  Westinghouse Credit Corp. v. Hall, 144 B.R. 568, 572 (S.D. Ga. 1992) (citing Lloyd v. Lawrence, 472 F.2d 313 (5th Cir. 1973)).  When the movant establishes a prima facie right to summary judgment, the

---

actions do you think State Bank of Texas took that you are referring to in this paragraph?

R.C. Patel:  The guaranty suit.  The suit which is out there now."
(R.C. Patel Depo. 112-113.)

nonmovant may not rest upon conclusory allegations in his pleadings, but must come forward with facts demonstrating that there is indeed a material issue of fact that precludes summary judgment.  See, e.g., McCollough v. Atlanta Beverage Co., 929 F. Supp. 1489, 1494-95 (N.D. Ga. 1996); Brown v. Westinghouse Savannah River Corp., 928 F. Supp. 1168 (S.D. Ga. 1996).

### B.      Guarantors are Liable for the Diplomat Loan Obligations.

SBT is entitled to judgment as a matter of law on its claims to enforce the clear and unambiguous terms of the Note and the Guaranties, which Guarantors freely and voluntarily executed.  "In Georgia, the enforcement of unambiguous terms in a written agreement, such as a guaranty, presents an issue of law properly decided by summary judgment."  Congress Fin. Corp., 910 F. Supp. at 641 (citing O.C.G.A. § 13-2-1).  Under Georgia law, contract construction is a matter of law for the court.  Woody's Steaks, LLC v. Pastoria, 261 Ga. App. 815, 817, 584 S.E.2d 41, 43 (2003).  The trial court simply enforces the contract in accordance with its unambiguous terms, looking solely to the contract for its meaning.  Id.  "Personal guaranties for enforceable contracts are valid under Georgia law."  CSU, L.L.C. v. OneSource Wholesale Copy, Inc., No. 1:05-CV-1453, 2006 U.S. Dist. LEXIS 55947, *5 (N.D. Ga. July 24, 2006).

Diplomat entered into the Note and Security Deed with Integrity.  (Compl. at ¶¶ 6-7; Answer at ¶¶ 6-7; S. Patel Aff. at ¶ 3.)  Diplomat's obligations under the Note and

Security Deed included, without limitation, the obligation to make timely payments. (Note, attached as Exhibit A to Complaint, 3; Security Deed, attached as Exhibit B to Complaint, ¶ 6.1.) Under the Security Deed, Events of Default included, but were not limited to, failure to make timely payments on the indebtedness and a bankruptcy filing by Diplomat. (Security Deed, attached as Exhibit B to Complaint, ¶¶ 6.1, 6.5.) Diplomat failed to make timely payments under the Note and filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. (S. Patel Aff. at ¶ 6.) Upon the occurrence of an Event of Default, the Security Deed clearly provides that SBT, as assignee of Integrity, is entitled to recover from Diplomat the full amount of indebtedness then due and payable. (Security Deed, attached as Exhibit B to Complaint, ¶ 7.1.)

Under the Guaranties, Guarantors "absolutely and unconditionally" agreed to be personally liable, jointly and severally, for all of Diplomat's obligations under the Note and Security Deed. (Guaranties, attached as Exhibits C and D to Complaint, ¶ I.A., I.C.11.) Guarantors defaulted under the terms of the Guaranties by not paying the obligations due and owing by Diplomat to SBT. (S. Patel Aff. ¶ 6.) Therefore, Guarantors are liable for the full balance due under the Loan Documents. See, e.g., Pac. Mutual Life Ins. Co. v. Wise, 878 F.2d 1398, 1399 (11th Cir. 1989) (affirming grant of summary judgment against guarantor); Congress Fin. Corp. v. Commercial

Technology, 910 F. Supp. 637, 645 (N.D. Ga. 1995)(granting summary judgment against guarantors); Cosby v. A.M. Smyre Mfg. Co., 158 Ga. App. 587, 281 S.E.2d 332 (1981) (affirming grant of summary judgment against guarantor).

Guarantors cannot avoid their absolute liability to SBT by claiming that SBT "surreptitiously obtained" Integrity's interest in the loan documents. (See Amended Counterclaim at ¶ 38).  First, Guarantors cannot establish any relationship between Diplomat and SBT that would raise a legitimate issue as to the legality of SBT's bid and ultimate purchase of Integrity's interest in the Loan Documents.  Prior to SBT's purchase of Integrity's interests in the Loan Documents, SBT and Diplomat never had a contractual relationship, and the only minimal contact between SBT and Diplomat related to Diplomat's request for financing to submit a bid on Integrity's interest in the Loan Documents. (R.C. Patel Depo. 87, 90.)  No confidentiality agreement ever existed between SBT and Diplomat.  (R.C. Patel Depo. 123-24.)

Further, under well-established Georgia law, the relationship between a bank and a potential borrower is arms-length and adversarial -- not confidential or fiduciary.  "[T]he Supreme Court of Georgia and [the Georgia Court of Appeals] have held that no confidential relationship exists between a bank and its customers or others with whom the bank deals." Lilliston v. Regions Bank, 288 Ga. App. 241, 243, 653 S.E.2d 306, 309 (2007). See also, Citizens & Southern Nat'l Bank v. Arnold, 240 Ga.

200, 201, 240 S.E.2d 3, 4 (1977) (there is no confidential or fiduciary relationship between a bank and its customer); <u>Moore v. Bank of Fitzgerald</u>, 225 Ga. App. 122, 125-26, 483 S.E.2d 135, 139 (1997); <u>First Union Nat'l Bank of Ga. v. Gurley</u>, 208 Ga. App. 647, 648, 431 S.E.2d 379, 381 (1993) (a bank and its borrower have an arms-length relationship and each must exercise its own due diligence); <u>Pardue v. Bankers First Fed. Savings & Loan Ass'n</u>, 175 Ga. App. 814, 815, 334 S.E.3d 926, 927 (1985) ("There is, moreover, <u>particularly</u> no confidential relationship between lender and borrower or mortgagee and mortgagor for they are credit and debtor with clearly opposite interests.") (emphasis in original).  Moreover, banks do not have a legal duty to treat information from a loan applicant confidentially in the absence of a contractual agreement to do so.  <u>Read & Lundy, Inc., et al. v. The Washington Trust Company of Westerly</u>, 840 A.2d 1099, 1102 (R.I. 2004) ("[i]n the absence of any agreement between the bank and its customer providing that the bank would not use any information received from the customer in deciding whether to lend money to another borrower" the bank does not violate any duty owed to the customer by using the customer's information for another purpose).

Because Guarantors have not and cannot establish any viable defense as to either the Note, Security Deed, or the Guaranties, SBT is entitled to summary judgment against each of the Guarantors for the full amount due and owing to SBT,

plus attorneys' fees.  See, e.g., Integon Life Ins. Corp. v. Browning, 989 F.2d 1143, 1143-54 (11th Cir. 1993) (affirming grant of summary judgment where guarantor's defenses failed); Brooks v. McCorkle, 174 Ga. App. 132, 329 S.E.2d 214 (1985) (where debtor was unable to raise a valid defense, creditor was entitled to judgment as a matter of law).   As of January 21, 2010, the principal and accrued interest owed under the Loan Documents totals $9,780,408.10 and continues to accrue interest at the rate of $2,175.66 per diem.  (S. Patel Aff. ¶ 11.)

### C.   **SBT is Entitled to Collect Its Reasonable Attorneys' Fees.**

Under the terms of the Guaranties, the Guarantors agreed to pay SBT's reasonable attorneys' fees upon default.  (Guaranties, attached as Exhibits C and D to Complaint, at ¶¶ I.A, 9.)  The Guarantors have received repeated notices regarding their liability for attorneys' fees in this matter.  In a letter from the FDIC dated October 23, 2008, attached as Exhibit E to the Complaint, the FDIC gave notice to the Guarantors that if they did not make full payment of the amount due that they would be held liable for attorneys' fees.  (Compl. at ¶ 10; Answer at ¶ 10.)  In a different letter from SBT's counsel dated April 27, 2009, attached as Exhibit F to the Complaint, SBT gave notice to the Guarantors, pursuant to O.C.G.A. § 13-1-11, that if they did not make payment to SBT, SBT intended to recover expenses of litigation as

provided for in the Guaranties and as defined by O.C.G.A. § 13-1-11[3].  (Compl. at ¶ 13; Answer at ¶ 13.)  Most recently, by letter dated November 30, 2009, Guarantors were provided ten days to pay the principal and interest owed without incurring attorneys' fees. (S. Patel Aff. ¶ 12, Ex. 1.) More than ten days has expired since SBT provided notice to the Guarantors, and the Guarantors have failed to make any payment to SBT.  (Id. ¶ 9.)

Applying the statutory formula set forth in O.C.G.A. § 13-1-11 to the debt owed by Guarantors pursuant to the Guaranties, Guarantors' obligation to SBT for attorneys' fees as of January 21, 2010, is $978,065.81. (Id. ¶ 13.)  Guarantors' obligation to SBT for attorneys' fees continues to increase daily as the unpaid interest accrues.

---

[3]      In relevant part, O.C.G.A. § 13-1-11 provides:

(a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified herein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney . . .:
(2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.

### D.   <u>Guarantors' tortious interference claim fails as matter of law.</u>

To proceed with a viable tortious interference with business relations claim, a counterclaimant must show that the counterclaim defendant: "(1) acted improperly and without privilege, (2) acted purposely and maliciously with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the [counterclaimant], and (4) caused [counterclaimant] financial injury." <u>Camp v. Eichelkraut</u>, 246 Ga. App. 275, 278, 539 S.E.2d 588, 592 (2000).  However, "[t]o be liable for tortious interference . . ., one must be a stranger to the business relationship giving rise to and underpinning the contract."  <u>Benefit Support, Inc. v. Hall County</u>, 281 Ga. App. 825, 830, 637 S.E.2d 763, 769 (2006) (internal quotations and citations omitted).  Where the counterclaim defendant has a "legitimate economic interest in either the contract or a party to the contract," the counterclaim defendant cannot be held liable for tortious interference.  <u>BMC-The Benchmark Mgmt. Co. v. Ceebraid-Signal Corp.</u>, 508 F. Supp. 2d 1287, 1293 (N.D. Ga. 2007).  Further, the counterclaimant must establish that the business relationship that is the subject of the tortious interference claim was "reasonably likely to develop in fact." <u>Camp</u>, 246 Ga. App. at 282, 539 S.E.2d at 595.  "An award for tortious interference with prospective business relations cannot be based on speculation that a relationship would develop." <u>Id</u>. at 283, 596.

The Guarantors' tortious interference claim that is based upon the theory that SBT interfered with the Guarantors' business relationships by filing this suit to enforce the Guarantor's guaranty obligations fails as a matter of law.  (R.C. Patel Depo. at pp. 112-113.)   "[A] claim for tortious interference with contractual relations cannot be predicated upon an allegedly improper filing of a lawsuit."  BKBJ P'ship v. Moseman, 284 Ga. App. 862, 866, 644 S.E.2d 874, 877 (2007); see also Phillips v. MacDougald, 219 Ga. App. 152, 155, 464 S.E.2d 390, 395 (1995) (holding that "as a matter of law" a tortious interference claim cannot be based on an allegedly improperly filed lawsuit).  Whether the alleged improper lawsuit is meritorious is irrelevant in the analysis of the tortious interference claim.  Phillips, 219 Ga. App. at 157, 464 S.E.2d at 396.  As a matter of law, a tortious interference claim cannot be based on a lawsuit, regardless of the merits of the underlying lawsuit.  Id.  For this reason alone, the Guarantors' tortious interference claim fails.

Moreover, SBT is not a stranger to any business relationship between the Guarantors and lenders who may extend loans to the Guarantors.  "[I]f the [counterclaim] defendant has a legitimate economic interest in either the contract or a party to the contract, then the [counterclaim] defendant is not a stranger to the contract and acts with privilege."  Tidikis v. Network for Med. Commc'ns & Research, LLC, 274 Ga. App. 807, 812, 619 S.E.2d 481, 486 (2005) (emphasis added); see also

Disaster Servs., Inc. v. ERC P'ship, 228 Ga. App. 739, 741, 492 S.E.2d 526, 529 (1997) (holding that a defendant is not liable for tortious interference when he has "a bona fide economic interest in the contract or relationship with one of the parties to the contract") "Where a [counterclaim] defendant has a financial interest in one of the parties to the contract or in the contract, the [counterclaim] defendant is not a stranger to the contract or business relationship, even though it is not a signatory to the contract." Tidikis, 274 Ga. App. at 812, 619 S.E.2d at 486.

The Guaranties provide an undeniable financial interest to SBT in that each Guarantor has promised to repay Diplomat's outstanding indebtedness under the Note. (See Guaranties attached as Exhibits C and D to Complaint.) Extensions of credit by lenders to Guarantors necessarily affect their financial conditions. The Guaranties themselves illustrate SBT's interest in the Guarantors' financial condition. Guarantors have a continuing obligation to disclose all of their liabilities and cash flow to SBT. (See id. § 6.) Guarantors have a continuing obligation to warrant that no material undisclosed changes have affected their financial conditions. (See id. § 8.1.) Guarantors have a continuing obligation to refrain from any credit transaction that changes the subordination of Diplomat's debt. (See id. § 5.) And, Guarantors have a continuing obligation to pay and perform on behalf of Diplomat. (See id. § 1.) SBT's clear financial interest in the Guaranties gives it a legitimate economic or financial

interest in Guarantors and their credit obligations.  Because SBT has a legitimate economic interest in Guarantors' attempts to obtain additional credit, Guarantors' tortious interference claim fails as a matter of law.  <u>Tidikis</u>, 274 Ga. App. at 812, 619 S.E.2d at 486.

Finally, Guarantors' tortious interference claim independently fails because Guarantors have not shown and cannot establish that SBT acted purposely and maliciously with the intent to injure.  <u>See</u>  <u>Camp</u>, 246 Ga. App. at 278, 539 S.E.2d at 592 (2000).

### E.    Guarantors are not entitled to attorneys' fees.

To recover attorneys' fees under O.C.G.A. § 13-6-11, the counterclaimant must show that the counterclaim defendant has acted in bad faith, has been stubbornly litigious, or has caused the counterclaimant unnecessary trouble and expense.  A counterclaimant cannot meet this burden where there is no other viable cause of action.  Guarantors' attorneys' fees count fails as a matter of law because their tortious interference claim fails.  <u>See</u> <u>Lamb v. Salvage Disposal Co. of Ga.</u>, 244 Ga. App. 193, 197, 535 S.E.2d 258, 261 (2000) (O.C.G.A. § 13-6-11 "does not create an independent cause of action but merely permits in certain limited circumstances the recovery of the expenses of litigation incurred as an additional element of damages").   Moreover,

SBT cannot be seen to have acted in bad faith by instituting legal action to collect a lawful debt owed to it by Guarantors.

## IV.   **CONCLUSION**

For the reasons stated herein, SBT respectfully requests that this Court enter summary judgment in favor of SBT and against Guarantors, jointly and severally, for the full amount owed by the Guarantors as of the date of the judgment, plus statutory attorneys' fees as defined in O.C.G.A. § 13-1-11.  As of January 21, 2010, this total amount, excluding post-judgment interest allowed by law, is not less than $10,758,473.  Furthermore, this Court should grant SBT summary judgment on the Guarantors' factually and legally unsupported counterclaim.

Respectfully submitted this 21st day of January, 2010.

**PARKER, HUDSON, RAINER & DOBBS LLP**

//s William J. Holley, II
William J. Holley, II
Georgia Bar No.  362310
Cinnamon V. Davis
Georgia Bar No. 428505
Melissa M. Burton
Georgia Bar No. 404685

285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303
Phone (404) 523-5300
Facsimile (404) 522-8409

Attorneys for State Bank of Texas

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with LR 7.1D, N.D. Ga., I certify that the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** has been prepared in conformity with LR 5.1, N.D. Ga. This memorandum was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch.  This memorandum is proportionately spaced, and is no longer than 25 pages.

This 21st day of January, 2010.

//s William J. Holley, II
William J. Holley, II

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** upon defendants utilizing the Court's CM/ECF filing system which will send electronic notification of such filing as follows:

> Mark G. Trigg
> Ryan C. Grelecki
> Greenberg Traurig, LLP
> Suite 400 - The Forum
> 3290 Northside Parkway
> Atlanta, Georgia 30327
> triggm@gtlaw.com
> greleckir@gtlaw.com

This 21st day of January, 2010.

> //s William J. Holley, II
> William J. Holley, II