**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **STATE BANK OF TEXAS,** | § | |
| | § | |
| *Plaintiff and Judgment Creditor*, | § | |
| | § | |
| vs. | § | |
| | § | |
| **RAJESH PATEL** *and* **MUKESH PATEL,** | § | **Civil Action No. 1:09-cv-01494-WBH** |
| | § | |
| *Judgment Debtors* and *Defendants* | § | |
| | § | |
| | § | |

**PLAINTIFF'S OPPOSITION TO THIRD PARTIES'
MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER** (DOC. #107)

## I.

## INTRODUCTION

As brothers Rajesh and Mukesh Patel ("Defendants") built a real estate and business empire, their family members were frequently their employees and business partners. As that empire crumbled—due in part to the brothers' default on a debt that resulted in this Court entering Judgment against them for approximately $7 million—the millions of dollars in business interests, hotels, houses, and other properties magically found there way into new limited liabilities companies with undisclosed ownership, serviced by attorneys who have appeared in this litigation, and apparently run by family members.

Because Plaintiff's post-judgment investigation revealed that Defendants were using their family members as counterparties in asset-dissipating transfers, Plaintiff subpoenaed some of the brothers' family, including those whose motion to quash is now before the Court, to wit: Shama Patel and Jay Patel, Rajesh's wife and adult son, respectively, and Hasmita Patel and Rishi Patel, Mukesh's wife and adult son, respectively (the "Movants").

Fraudulent transactions involving the Defendants and Movants have already been discovered, and are textbook fraudulent conveyances, including zero-consideration or otherwise suspicious transfers of homes, businesses, and commercial real estate.

Discovery as to the Movants is this justified because (1) their motion was untimely and therefore the objections have been waived, (2) the motion is meritless because in the Eleventh Circuit, Rule 69 post-judgment discovery is broad and the documents in question are indisputably relevant.

## II.

## THIS COURT SHOULD OVERRULE MOVANTS' OBJECTIONS

Plaintiff has affirmatively set forth the grounds and bases for the documents it has requested in its Motion to Compel and for Sanctions, filed contemporaneously with this Response. The Motion is incorporated here.

Other than the bromide that their financial affairs are completely unrelated to Defendants' debt—a notion thoroughly dispelled in Plaintiff's Motion to Compel filed contemporaneously herewith—Movants' only argument is that the subpoenas seek information that would violate their financial privacy rights, or that production would be unduly burdensome.

These arguments have been waived, and even if not, are meritless.

## A. Movants Objections are Waived as Procedurally Deficient and Untimely

A motion to quash must be timely filed in order for the Court to consider it.[1] Under Rule 45—to the extent its procedures are incorporated into Rule 69—a subpoenaed party must file a motion to quash within the earlier of 14-days timeframe the Rules set out for raising "objections" to a subpoena or the return of service date.[2] Others have concluded that a larger period of time is reasonable, but the consensus among these courts is that the time within which compliance is ordered in the subpoena is the outer bound for filing a motion to quash.[3]

Here, the Movants were untimely by any definition.

---

[1] *See* Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv).

[2] *See, In re Ecam Publications, Inc.*, 131 B.R. 556 (Bankr. S.D.N.Y. 1991)(holding that the term timely should be read in conjunction with 45(c)(2)(B), that requires a party subject to a subpoena to object to a subpoena *duces tecum* within 14 days of service of the subpoena).

[3] *See In re Subpoena For Rule 2004 Examination to the Wauregan Co., Inc.*, No. 10–mc–00005–JL, 2010 WL 678935 at *1 (D.N.H. Feb. 22, 2010); *City of St. Petersburg v. Total Containment, Inc.*, No. 06–cv-20953, 2008 WL 1995298 at *2 (E.D. Pa. May 5, 2008); *Estate of Ungar v. Palestinian Authority*, 451 F.Supp.2d 607, 610 (S.D.N.Y. 2006); *Innomed Labs, LLC, v. Alza, Corp.*, 211 F.R.D. 237 (S.D.N.Y.2002).

Plaintiff's subpoenas, which allowed 21 days to comply, were served on or about August 11, 2014,[4] but Movants waited two and a half *months* to file their motion to quash asserting their objections.[5] Movants did not seek an extension of time or confer with Plaintiff's counsel concerning any scheduling issues. Accordingly, their motion is untimely (and considerably so), and Movants have waived all grounds for objection asserted therein.[6]

Such waiver is plenary, and extends to "[a]ny assertions" including that the subpoena "was unduly burdensome [or] overbroad"[7] and "include[ing] any

---

[4] *See, e.g.*, Doc. # 107 Ex. A (Plaintiff's Notice of Intent to Take Deposition of Jay Patel and Subpoena Duces Tecum). Service was made by via First-Class mail, which is a valid form of service for subpoenas under Rule 45. *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) ("We see no reason to inflate the costs of litigation by ruling out this sensible option for serving a subpoena [via certified mail] and requiring parties to hire a second person for service, at least in the absence of any language in the Rule that compels such a result."). *Accord Codrington v. Anheuser-Busch, Inc.*, No. 98-cv-2417, 1999 WL 1043861 at *1 (M.D. Fla. Oct. 15, 1999); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997). Furthermore, it is hornbook law that any defect in service can be waived by a party, and that waiver is effected when a party appears and asserts its arguments against a filing (subpoena, complaint, etc.) but fails to raise defective service. *Stansell v. Revolutionary Armed Forces of Colombia*, __F.3d__, No. 13-11339, 2014 WL 5293562 at *14 (11th Cir. Oct. 16, 2014) (failure to assert defect in service constitutes waiver of the objection); *Brown v. Morgan*, 163 F. 395, 400 (C.C.N.D. Iowa 1908) ("appearance of the defendant waives any defects in the service of the subpoena, if any there be"). Even accounting for the additional three days allowed following service by mail under Fed. R. Civ. P. 6(d), Respondents' motion to quash was almost two months late.

[5] Doc. #107 (filed October 20, 2014).

[6] *Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 85 (D.P.R. 2006) (delay of three months following service and two months as to date for compliance waived motion to quash); *In re Corso*, 328 B.R. 375, 385 (E.D.N.Y. 2005) (non-party's two month delay after service of subpoena waived all objections in its motion to quash); *United States v. Int'l Bus. Machines Corp.*, 70 F.R.D. 700, 702 (S.D.N.Y. 1976) (non-party's two month and one week delay following service constituted waiver).

[7] *In re Corso*, 328 B.R. at 385.

objection based on privilege." [8] Though harsh, "[a]ny other result would ... completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences."[9]

Thus, as courts in this circuit have held in the face of waiver, Movants "must provide *all* requested documents which are within their possession, custody or control within the meaning of Fed. R. Civ. P. 34(a)"[10] in response to the subpoenas. That ends the inquiry.

### B. MOVANTS' TAX RETURNS AND FINANCIAL RECORDS ARE NOT PRIVILEGED AND SHOULD BE DISCLOSED

Movants claim that privacy rights in their tax returns and financial documents exempt them from discovery, citing a single, forty year old case from the Ninth Circuit that did not apply to post-judgment discovery under Rule 69 for the purpose of collecting a judgment.[11] Furthermore, "the Eleventh Circuit has not recognized

---

[8] *Henry v. Nat'l Housing P'ship*, 1:06-cv-009, 2007 WL 2746725 at *1 (N.D. Fla. Sept. 18, 2007). *Accord Marx v. Kelly, Hart & Hallman*, 929 F.2d 8, 12 (1st Cir. 1991) ("But the assertion of privilege must be timely and must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim.") (finding claims of privilege and all other objections waived).

[9] *Young v. United States*, 149 F.R.D. 199, 206 (S.D. Cal. 1993) (internal quotation marks and citation omitted).

[10] *Henry*, 2007 WL 2746725 at *1 (emphasis added) (citation omitted).

[11] Doc. #107 at 8, citing *Premium Serv. Corp. v. Sperry & Hutchinson, Co.*, 511 F.2d 225, 229 (9th Cir. 1975).

any special privilege for tax returns and therefore," in this circuit, "'the discoverability of tax returns turn[s] on relevance.'"[12]

## (i) Movants' Tax Returns and Financial Records are Critically Relevant

Movants' repetitive protests that they are "not parties to this litigation and are not liable for payment of the Judgment" are insufficient to discharge their initial burden to show their records are not relevant.[13] Rather, as numerous courts have observed, "[tax] records *are* relevant to [a] claim of *lack* of involvement with [defendant's] alleged fraudulent activities,"[14] and bring a third-party does not insulate one from discovery under Rule 69.[15]

These protests also ring hollow in light of the evidence already uncovered, linking Movants to asset-dissipating transfers of the homes, businesses, commercial properties, and other property of Defendants, and tax and financial documents are

---

[12] *Weber v. Finker*, No. 3:07-mc-27, 2008 WL 1771822 at *8 (M.D. Fla. April 15, 2008) (quoting *Shearson Lehman Hutton, Inc. v. Lambros*, 135 F.R.D. 195, 198 (M.D. Fla.1990)) *affirmed*, 2008 WL 2157034 (M.D. Fla. May 20, 2008). *Accord Shearson Lehman Hutton, Inc. v. Lambros*, 135 F.R.D. 195, 198 (M.D. Fla. 1990) ("However, it appears that the quasi-privilege for tax returns has not been expressly recognized within this Circuit. Rather, the discoverability of tax returns has turned on relevance."). *See also Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846 (1997) (affirming district court's order requiring plaintiff to provide tax returns in discovery but vacating district court's award of attorney fees on defendant's motion to compel because plaintiff's refusal was "substantially justified" in light of conflicting precedents on the issue in other circuits and no Eleventh Circuit case yet on point).

[13] *U.S. v. Certain Real Property*, 444 F. Supp. 2d 1258, 1265 (S.D. Fla. 2006) ("as the party resisting discovery, Claimant has failed to show that his tax records are not relevant").

[14] *Id.* at 1264 (emphasis added).

[15] *See Moll v. U.S. Life Title Ins. Co. of New York*, 113 F.R.D. 625, 631 (S.D.N.Y. 1987) (third party business records and financial documents discoverable).

discoverable in such situations. [16] Indeed, where fraudulent conveyances and misdealing are at issue, "financial records are relevant to establishing the financial relationships" among defendants masterminding the fraud "and the other purported participants in the scheme."[17]

Further, such records help to show how the "participants divvied up the proceeds of their fraud, who they employed in furtherance of their scheme, and how the relationship was structured to further and conceal the fraud."[18] Specifically, the persons involved are reasonably believed to be nominally in control of assets that, in reality, were seeded by Rajesh and Mukesh Patel as part of their scheme to defraud.

Stated simply, because in such situations "the entire scheme is premised on *hiding* and *disguising* the financial relationship between" the various participants working with Defendants, "the ways in which their financial records … compare will be relevant or, at bare minimum, likely to lead to the discovery of admissible

---

[16] *E.g., In re Victor Intern., Inc.*, 278 B.R. 67, 76 (Bankr. D.N.J. 2002)  ("The required tax returns would, if produced, have in the court's view been probative in evaluating debtor-defendant transfers.") (also granting default judgment as to, *inter alia*, fraudulent transfer claims as sanction for debtor's refusal to produce all tax returns) *aff'd* 97 Fed.Appx 365 (3d Cir. March 11, 2004).

[17] *MedCity Rehab. Servs., LLC v. State Farm Mut. Auto. Ins. Co.*, No. 11-cv-14777, 2013 WL 1898374 at *3 (E.D. Mich. May 7, 2013) (requiring disclosure of party and third-party documents alike) *on reconsideration in part regarding other issues* No. 11-CV-14777, 2013 WL 4029052 (E.D. Mich. Aug. 7, 2013) (addressing certain attorney-client privilege issues unrelated to tax and financial disclosure).

[18] *Id.*

evidence."[19] Tax returns are key indicia of the amount and sources of income, and thus are "reasonably calculated to lead to the discovery of admissible evidence." Moreover, Objectors never identify how the same information could be gleaned in a less burdensome way and from an equally reliable source.

### (ii) Even Under the "Qualified Privilege" Test Employed in Other Circuits, the Records are Discoverable and Must be Disclosed

Even when courts have failed to immediately recognize the relevance of tax returns, they have at most held that there is a qualified privilege. Thus, at worst, tax documents are not absolutely privileged, but rather the subject of a two-step inquiry. Returns must be produced in discovery if they are: (1) relevant, and (2) there is a compelling need for them because the information contained in the requested documents is "not otherwise readily obtainable."[20]

That is not the law in this circuit since, as one court observed, "in *Maddow* [*v. Procter & Gamble*],[21] the Eleventh Circuit was squarely presented with such issue and declined to adopt the higher standard [than simple privilege]."[22] But even if this two-step test were applied, contrary to circuit precedent, the documents at issue are properly discoverable for three reasons.

---

[19] *State Farm Mut. Auto. Ins. Co. v. McGee*, No. 10-cv-3848, 2012 WL 8281725 at *2 (E.D.N.Y. Feb. 21, 2012) (emphasis added).

[20] *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190-91 (C.D. Cal. 2006).

[21] *Maddow v. Procter & Gamble Co., Inc.,* 107 F.3d 846, 853 (11th Cir.1997).

[22] *Certain Real Property*, 444 F. Supp. 2d at 1263.

___First___, once relevance is established "[t]he burden then shifts to the adverse party, to show the information in the tax returns is more readily obtainable elsewhere."[23] Movants make no attempt to demonstrate this. In fact, there is no mention at all of the two-part inquiry employed by those courts that have adopted the qualified privilege Movants apparently support. The Court need not "speculate as to other available sources" of information, rather "[t]he party resisting discovery must affirmatively show that other sources indeed exist from which the requesting party can glean the desired information."[24] Movants have failed to do so.

___Second___, the significant evidence of dishonest transfers involving Movants renders them inherently unreliable narrators of their own financial condition. Even if they had proffered alternate sources for the information sought, asking

---

[23] *EEOC v. Ceridian Corp.*, 610 F. Supp. 2d 995, 997 (D. Minn. 2008) (citing *A. Farber & Partners, Inc.*, *supra* at n.25, and *Gattegno v. Pricewaterhousecoopers, LLP*, 205 F.R.D. 70, 72 (D. Conn.2001). *Accord*, *United States v. Real Prop. & Improvements Located at 2441 Mission St., San Francisco, California*, No. c 13-2062 si, 2013 WL 6774081 at *1 (N.D. Cal. Dec. 23, 2013); *In re Air Crash near Clarence Ctr., New York, on Feb. 12, 2009*, No. 09-cv-294S, 2013 WL 5936975 at *5 (W.D.N.Y. Nov. 4, 2013); *Flores v. Tyson Foods, Inc.*, No. 4:12-cv-3089, 2013 WL 1091044 at *1 (D. Neb. Mar. 15, 2013); *Hilt v. SFC Inc.*, 170 F.R.D. 182 (D. Kan. 1997).

[24] *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 665 (D. Kan. 1999). *Accord A. Farber & Partners, Inc.*, 234 F.R.D. at 191 ("[D]efendant Garber has not shown, or even attempted to show, the information sought is available from other sources. Therefore, defendant Garber's tax returns and related documents are discoverable in this action."); *Burket v. Hyman Lippitt, P.C.*, No. 05-cv-72110, 2007 WL 2214302 at *2 (E.D. Mich. July 27, 2007) ("The party opposing production is in the best position to show that the information is available from another source.") *objections overruled sub nom. Burket v. Hyman Lippitt, P.C*, No. 05-72110, 2007 WL 3124637 (E.D. Mich. Oct. 23, 2007); *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 626 (E.D.N.Y. 1988) (same).

Defendants' close associates—all represented by the same law firm—which documents one might consult in order to confirm that nothing is amiss in their financial affairs is akin to putting vampires in charge of guarding the blood bank.

The cases bear this out. Decisions suggesting targeted interrogatories or other less intrusive means are the appropriate first resort have involved situations where the adverse party's financial information was relevant to issues like calculating damages, but there was no appearance of fraud or financial misconduct.[25] In cases involving fraudulent conveyances or other suspect financial conduct, courts recognizing the qualified privilege have found the "compelling need" satisfied and required disclosure.[26]

***Third***, the business operations of Defendants and their associates—whether legitimate or not—are massively complex, spanning numerous properties held by hundreds of interwoven corporations and sub-corporations whose ownership

---

[25] *See e.g., Bujnicki v. Am. Paving & Excavating, Inc.*, No. 99-cv-0646S, 2004 WL 1071736 at *15 (W.D.N.Y. Feb. 25, 2004) ("[Plaintiff's tax return] is relevant … to assess plaintiff's claim of diminished earning capacity. However, disclosure of plaintiff's W–2 and Wage Statements are sufficient to enable defendants to assess plaintiff's earnings."). *Accord Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-cv-2395, 1995 WL 625962 at *12 (D. Kan. Oct. 5, 1995).

[26] *See McGee*, 2012 WL 8281725 at *3 (applying two-step test and upholding disclosure of tax records from various doctors sued for insurance fraud); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 155 (E.D.N.Y. 2005) (ordering production of doctor's tax returns, general ledgers and bank records in RICO action as relevant to the issue of profits and motive where State Farm had alleged medical services were not performed pursuant to medical necessity, but for the defendants' financial gain) *Cf. Powell v. Merrimack Mut. Fire Ins. Co.*, 80 F.R.D. 431, 433 (N.D. Ga. 1978) ("Plaintiff's financial status at the time of the fire is relevant and discoverable.") (holding tax records discoverable as to party suspected of insurance fraud, applying the Eleventh Circuit's pure relevance test).

structure and relationship to one another is convoluted, if not in flux.[27] Forcing Plaintiff to attempt to construct targeted interrogatories for all the companies under Defendants' and Movants' control would require duplicative information requests directed to various individuals regarding a protracted list of companies, properties, and other holdings, guaranteeing an ungainly discovery project to be managed by this Court. Even if all the information Plaintiff would glean from the disclosure of tax returns and financial documents were *eventually* obtainable in this way, one could hardly call such material "otherwise *readily* obtainable."[28] In such situations, courts applying heightened scrutiny have found allowing discovery of tax returns to be a preferable alternative.[29]

Under either approach, Movants' tax returns and other financial documents should be disclosed in accord with Plaintiff's discovery requests.[30]

---

[27] Affidavit at __.

[28] *Garber*, 234 F.R.D. at 191 (emphasis added).

[29] *See State Farm Mut. Ins. Co. v. Policherla*, No. 08-cv-13939, 2009 WL 2170183 at *2(E.D. Mich. July 20, 2009) (granting discovery of financial information to assess the financial relationship among the defendants, the structure of the enterprise, measure the scope and extent of defendants' fraud, prove motive, identify other witnesses who may have participated in the scheme and to prove damages); *Certain Real Property*, 444 F. Supp. 2d at 1263-65 (where resisting party claimed to own property legitimately, but through a complicated web of off-the-books agreements involving real estate exchanged for interior decorating services and where counterparties testimony was unavailable, tax records were the best hope of constructing a complete picture of the transactions).

[30] Legitimate *privacy* concerns can easily be accommodated with a non-disclosure protective order, and Plaintiff would not oppose *that* form of protective order as to Movants' financials. *See In re Heritage Bond Litigation*, No. 02-cv-1475 2004 WL 1970058 at *5 n. 12 (C.D.Cal.) ("Any privacy concerns Kasirer defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter.").

### c. MOVANTS' REQUEST FOR A PROTECTIVE ORDER SHOULD BE DENIED BECAUSE THEY HAVE FAILED TO PROPERLY SUPPORT IT VIA AFFIDAVIT

When sought, "[t]he party seeking a protective order has the burden to demonstrate good cause, and must make a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements supporting the need for a protective order."[31]

Other than offering the same incantations that inquiry into their financial affairs is not relevant, the only other ground Movants offer to support protective order is the unadorned assertion that complying with production would be "unreasonably oppressive and annoying and will cause the [Movants] undue burden and expense."[32] But "[a] party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."[33]

The repeated assertion that a subpoena is oppressive and compliance will be timely and expensive from one who does not "offer any affidavits to support []

---

[31] *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005) (internal quotation marks and citation omitted).

[32] Doc. #107 at 10.

[33] *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (quoting 9 James Wm. Moore et al., Moore's Federal Practice ¶ 45.51[4] (3d ed. 2009)). *Accord Trinos*, 250 F.R.D. at 698 ("party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved") (quoting *Speed Trac Technologies, Inc. v. Estes Exp. Lines, Inc.*, No. 8-cv-212, 2008 WL 2309011, *5 (D.Kan. June 3, 2008)); *United Oil Co., Inc. v. Parts Associates, Inc.*, 227 F.R.D. 404, 413 (D.Md.2005)(burdensomeness objection must be supported with a "formal affidavit").

conclusory assertion to that effect" cannot discharge the burden contemplated by the Federal Rules,[34] indeed such unsubstantiated assertions actually *violate* this District's Local Rules.[35]

To the extent Movants' arguments have any substance at all, their gravamen seems to be that the scope of Defendants' and their associates' labyrinthine empire of LLCs, sub corporations, and properties is so large, the undue burden of complying with discovery requests is somehow self-evident. This is false. It is not Plaintiff's fault that Movants and Defendants are entrenched in complex business dealings, and "[t]he mere size of [their] operation is no excuse for [the] refusal to give information."[36]

Finally, as for Movants' personal property, contrary to their suggestion that Plaintiff's purpose in this request is harassment, movable personal property can be effectively used in fraudulent transfer schemes just like real property.[37] However, to balance Plaintiff's need for discovery and Movants' privacy, Plaintiff will

---

[34] *N.L.R.B. v. Brown Transport Corp*., 620 F.Supp. 648, 654 (N.D. Ill. 1985).

[35] LR 7.1(A)(1), N.D. Ga. ("[i]f allegations of fact are relied upon," here Movants' claims of the expense and burden they will incur, "supporting affidavits *must* be attached to the memorandum of law."

[36] *NLRB v. United Aircraft Corp.*, 200 F.Supp. 48, 51 (D.Conn. 1961), *aff'd mem*., 300 F.2d 442 (2d Cir.1962).

[37] *See, e.g., In re Fine Diamonds, LLC,* 501 B.R. 159 (Bankr. S.D.N.Y. 2013) (millions of dollars in diamonds used to effect fraudulent transfer); *In re DeMarco*, 454 B.R. 343 (Bankr. E.D. Pa. 2011) (luxury autos and jewelry used to effect fraudulent transfers).

voluntarily limit this request to personal property worth $3,000 or more, as

reflected in its Proposed Order.


Respectfully submitted this 6th Day of November, 2014.


\_\_\_\_\_/s/ Mazin A. Sbaiti_____          \_\_\_\_\_/s/ Adam Webb_____

Mazin A. Sbaiti (Pro Hac Vice)                Adam Webb

**Steckler LLP**                              **Webb Klase & Lemond LLP**

Two Hillcrest Green                           1900 The Exchange, S.E.

12720 Hillcrest Rd.                           Suite 480

Suite 1045                                    Atlanta, Georgia 30339

Dallas, Texas 75230                           T: (770) 444-9325

T: (972) 387-4040                             F: (770) 444-0271

F: (972) 853-4367                             E: Adam@WebbLLC.com

E: Mazin@Stecklerlaw.com

E: Kim@StecklerLaw.com

***Counsel for Plaintiff State Bank of Texas***