IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **STATE BANK OF TEXAS,** § § *Plaintiff and Judgment Creditor*, § § vs. § § **RAJESH PATEL** *and* **MUKESH PATEL,** § § *Judgment Debtors* and *Defendants* § § § | Civil Action No. 1:09-cv-01494-WBH |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH SUBPOENA
OR FOR PROTECTIVE ORDER** (DOC. #108)

---

**PLAINTIFF State Bank of Texas** brings before this Court its Opposition to Knight | Johnson's Motion to Quash Subpoena (Doc. #108) and cross-motions to compel Knight | Johnson to submit the discovery now at issue, and for sanctions. Plaintiff would respectfully show this Court the following:

**I.**

**INTRODUCTION**

The relevant background and procedural facts have already been narrated at greater length in Plaintiff's contemporaneous motions. Plaintiff is pursuing post-judgment discovery to locate assets belonging to Rajesh and Mukesh Patel ("Defendants") that could be used to satisfy the multimillion-dollar Judgment rendered against them in this Court.

Page 1

To that end, Plaintiff submitted a number of subpoenas to those whose association with Defendants suggest they might have assets belonging to them, or have information about such assets. One of the entities receiving a subpoena was Knight | Johnson, LLP ("Knight"), the law firm that represents Defendants and a number of their relatives in this case and associated cases.

The available evidence demonstrates that Defendants are engaged in a fraudulent transfer scheme, designed to dissipate their apparent asset through transfers to their relatives in order to "judgment proof" themselves from paying what this Court says they owe. Evidence supporting this conclusion includes:

- Defendants transferring their multi-million dollar homes to their wives, for no consideration, yet continuing to reside in them;

- Defendants transferring their ownership businesses and associated contracts and rights to payment to relatives, for no consideration, but, upon information and belief, continuing to run them;

- Defendants setting up strawman companies to shuttle title to multimillion dollar commercial properties into the hands of their children for sham consideration; and

- Defendants liquidated their personal bank accounts and transferred large personal property items to their wives and other insiders.

Heightening Plaintiff's concern is the fact that Rajesh Patel was indicted by federal prosecutors in the Middle District of Tennessee for racketeering and defrauding investors in his real estate ventures.

Plaintiff sent a subpoena to Defendants' lawyers at Knight | Johnson, seeking information that might reveal assets which could be executed in satisfaction of Judgment, which Knight has opposed.

The problem with Knight | Johnson's opposition is three-fold:

*First*, Knight | Johnson has waived any objection, including privilege.

*Second*, property and documents in the possession, custody or control of Knight Johnson that are responsive to requests that were sent to any of the Defendants or Third-Parties under Subpoena are fair game—they are discoverable as being presumptively in the possession of the other subpoenaed parties as well.

*Third*, Documents, information, money and property in Knight | Johnson's possession is discoverable under Rule 69 as long as they do not constitute "communications" reflecting the request for and provision of legal advice.

We now turn to the substantive arguments.

## II.

## THIS COURT SHOULD OVERRULE THE OBJECTIONS

### A. THE OBJECTIONS TO THE SUBPOENAS HAVE BEEN WAIVED AS PROCEDURALLY DEFICIENT AND AS UNTIMELY

A motion to quash must be timely filed in order for the Court to consider it.[1] An opposing party must file a motion to quash within the 14-day timeframe the Rules

---

[1] *See* Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv).

set out for raising "objections" to a subpoena.[2] Others have concluded that a larger period of time is reasonable, but the consensus among these courts is that the time within which compliance is ordered in the subpoena is the outer bound for filing a motion to quash.[3]

Here, the Movants were untimely by any definition. Plaintiff's subpoenas, which allowed 21 days to comply, were served on or about August 20, 2014,[4] but Movants waited two *months* to file their motion to quash asserting their objections.[5] Movants did not seek an extension of time or confer with Plaintiff's counsel concerning any scheduling issues. Accordingly, their motion is untimely (and

---

[2] *See, In re Ecam Publications, Inc.*, 131 B.R. 556 (Bankr. S.D.N.Y. 1991)(holding that the term timely should be read in conjunction with 45(c)(2)(B), that requires a party subject to a subpoena to object to a subpoena *duces tecum* within 14 days of service of the subpoena).

[3] *See In re Subpoena For Rule 2004 Examination to the Wauregan Co., Inc.*, No. 10–mc–00005–JL, 2010 WL 678935 at *1 (D.N.H. Feb. 22, 2010); *City of St. Petersburg v. Total Containment, Inc.*, No. 06–cv-20953, 2008 WL 1995298 at *2 (E.D. Pa. May 5, 2008); *Estate of Ungar v. Palestinian Authority*, 451 F.Supp.2d 607, 610 (S.D.N.Y. 2006); *Innomed Labs, LLC, v. Alza, Corp.*, 211 F.R.D. 237 (S.D.N.Y.2002).

[4] Service was made by via First-Class mail, which is a valid form of service for subpoenas under Rule 45. *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) ("We see no reason to inflate the costs of litigation by ruling out this sensible option for serving a subpoena [via certified mail] and requiring parties to hire a second person for service, at least in the absence of any language in the Rule that compels such a result."). *Accord Codrington v. Anheuser-Busch, Inc.*, No. 98-cv-2417, 1999 WL 1043861 at *1 (M.D. Fla. Oct. 15, 1999); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997). Furthermore, it is hornbook law that any defect in service can be waived by a party, and that waiver is effected when a party appears and asserts its arguments against a filing (subpoena, complaint, etc.) but fails to raise defective service. *Stansell v. Revolutionary Armed Forces of Colombia*, __F.3d__, No. 13-11339, 2014 WL 5293562 at *14 (11th Cir. Oct. 16, 2014) (failure to assert defect in service constitutes waiver of the objection); *Brown v. Morgan*, 163 F. 395, 400 (C.C.N.D. Iowa 1908) ("appearance of the defendant waives any defects in the service of the subpoena, if any there be"). Even accounting for the additional three days allowed following service by mail under Fed. R. Civ. P. 6(d), Respondents' motion to quash was almost two months late.

[5] Doc. #107 (filed October 20, 2014).

considerably so), and Movants have waived all grounds for objection asserted therein.[6]

Such waiver is plenary, and extends to "[a]ny assertions" including that the subpoena "was unduly burdensome [or] overbroad"[7] and "include[ing] any objection based on privilege."[8] Courts have recognized the importance of such discovery, noting that "[a]ny other result would...completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences."[9]

Thus, as courts in this circuit have held, Movants "must provide *all* requested documents which are within their possession, custody or control."[10]

---

[6] *Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 85 (D.P.R. 2006) (delay of three months following service and two months as to date for compliance waived motion to quash); *In re Corso*, 328 B.R. 375, 385 (E.D.N.Y. 2005) (non-party's two month delay after service of subpoena waived all objections in its motion to quash); *United States v. Int'l Bus. Machines Corp.*, 70 F.R.D. 700, 702 (S.D.N.Y. 1976) (non-party's two month and one week delay following service constituted waiver).

[7] *In re Corso*, 328 B.R. at 385.

[8] *Henry v. Nat'l Housing P'ship*, 1:06-cv-009, 2007 WL 2746725 at *1 (N.D. Fla. Sept. 18, 2007). *Accord Marx v. Kelly, Hart & Hallman*, 929 F.2d 8, 12 (1st Cir. 1991) ("But the assertion of privilege must be timely and must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim.") (finding claims of privilege and all other objections waived).

[9] *Young v. United States*, 149 F.R.D. 199, 206 (S.D. Cal. 1993) (internal quotation marks and citation omitted).

[10] *Henry*, 2007 WL 2746725 at *1 (emphasis added) (citation omitted).

## B. PLAINTIFFS ARE ENTITLED TO THE DOCUMENTS, INFORMATION AND PROPERTY HELD BY KNIGHT | JOHNSON TO THE SAME EXTENT THEY ARE ENTITLED TO THEM FROM THE DEFENDANTS AND THEIR AFFILIATES

Knight | Johnson has been subpoenaed in part as a custodian or trustee of property, documents regarding transactions, and related information kept by it on behalf of the Defendants, their family members, and their affiliated businesses.

What Knight | Johnson conceals from this Court is that 100% of the documents requested relate to either the Defendants who have avoided producing documents, their family members who were subpoenaed, and their affiliated corporate entities who have also been subpoenaed. None of the documents requested actually belong to Knight | Johnson. They are all client documents.

The fact that they are all client documents means that the documents actually belong to the subpoenaed clients, and should be produced as part of those subpoenas, anyway. Knight | Johnson as custodian cannot evade that duty by evoking privilege. As one court explained, "a document, which is not privileged in the hands of the client, will not be imbued with the privilege merely because the document is handed over to the attorney,"[11] and "transaction documents are typically not protected by the attorney-client privilege."[12]

---

[11] *Mason C. Day Excavating, Inc., v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 607 (M.D.N.C.1992) (citing *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 825 F.2d 676, 679-80 (2nd Cir.1987)).

[12] *Waldemar E. Albers Revocable Trust v. Mid-American Energy, Inc.*, 2008 U.S. Dist. LEXIS 77619 *1 (M.D.Ga. 2008).

Therefore, Knight | Johnson can be compelled to produce documents, information and property in its possession, custody or control, that are relevant to discovering the assets and disposition of assets belonging to Defendants.

### C. MONEY OR PROPERTY IN THE POSSESSION OF AN ATTORNEY CAN BE ATTACHED TO SATISFY A JUDGMENT AND IS THEREFORE APPROPRIATE FOR DISCOVERY

It is well established that a client cannot render property beyond the reach of creditors simply by placing it in the possession of his or her attorney.[13]

Furthermore, under the Georgia Bar Rules, money held in an attorneys' trust account for the benefit of a client is the property of the *client*.[14] When a third party establishes an interest in such funds or property, the Bar Rules provide that "When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and a client or a third person claim interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests."[15] The comment to this rule amplifies:

> Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third-party claims against

---

[13] *United States v. Bernstein, Narkier & Karp, P.A.*,1991 U.S. Dist. LEXIS 3001 *14 (S.D. Fla., Mar. 1, 1991) (holding that trust account records are not subject to attorney client privilege, contrary to Fla. Bar opinion).

[14] *See* Ga. Bar Rule 1.15 (I) and (II). Georgia Bar Rule 1.15(I)(d) actually authorizes a third party who has an interest in any property held by the lawyer to receive an accounting of such property.

[15] *See* Ga. Bar Rule 1.15 (I) (d).

wrongful interference by the client, and accordingly may refuse to surrender the property to the client.[16]

In fact, to the extent Knight | Johnson is in possession of personal property or money belonging to either Rajesh or Mukesh Patel, or held in trust for their benefit, the failure to inform Plaintiff of such funds and turn them over is a violation of the Georgia Bar Rules.[17] Most jurisdictions have similar rules, and courts have allowed garnishment proceedings against attorneys for money or property held in their trust accounts on clients' behalf.[18]

### D. KNIGHT | JOHNSON HAS FAILED TO DEMONSTRATE THAT COMPLIANCE WITH THE SUBPOENA WILL IMPOSE AN UNDUE BURDEN

As with the other motions on this issue, Knight offers the boilerplate assertion that compliance with the subpoenas will be unduly burdensome. This assertion is not substantiated with any evidence, or even examples of the onerousness of the burden,

---

[16] *Id.* at cmt. [3].

[17] *See* Ga. Bar Rule 1.15 (I) ("Except as stated in this Rule or otherwise permitted by law or by agreement with the client, ***a lawyer shall promptly deliver to*** the client ***or third person*** any funds or other property that the client or ***third person is entitled to receive*** and, upon request by the client or third person, ***shall promptly render a full accounting regarding such property***.") (emphasis added).

[18] *See, e.g., MC-UA Local 119 Health & Welfare Fund v. Air Comfort Co.,* 2012 U.S. Dist. LEXIS 9872 (S.D. Ala., Jan. 26, 2012) (granting motion for garnishment on trust account of judgment creditors' counsel); *Syndicate Exch. Corp. v. Duffy (In re Pro Greens, Inc.),* 297 B.R. 850, 854 (Bankr. M.D. Fla. 2003) (approving garnishment of funds in attorney trust account). *See also Wild W. Motors v. Lingle*, 224 Mont. 76, 83 (Mont. 1986) (moneys placed with attorney attached and then ordered paid to client's creditor); *Fisher v. Jacobs*,39 Ill. App. 2d 332, 336-337 (Ill. App. Ct. 1st Dist.1963) (attorney ordered to pay over funds to judgment creditor); *Federal Trust Co. v. Ireland*,132 Kan. 615, 616 (Kan. 1931) (Attorney was proper defendant in foreclosure action when attorney held title to property in trust for defendant judgment creditor).

such as preliminary search results reflecting the number of documents at issue, and they should be rejected.

"A party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."[19] The unadorned assertion that compliance with a subpoena will be timely, expensive, or otherwise unmanageable from one who does not "offer any affidavits to support [] conclusory assertion to that effect" cannot discharge the significant burden required of one seeking to quash. [20] Unsupported assertions also violate this District's Local Rules, which require that "[i]f allegations of fact are relied upon," here Knight's claims of the burden they will incur, "supporting affidavits *must* be attached to the memorandum of law."[21]

To the extent Knight's arguments have any substance at all, their gravamen seems to be that the scope of Defendants' and their associates' labyrinthine empire of LLCs, sub corporations, and other affiliates is so large—it does indeed encompass many properties and corporations owned by various entities—that the undue burden

---

[19] *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (quoting 9 James Wm. Moore et al., Moore's Federal Practice ¶ 45.51[4] (3d ed. 2009)). *Accord Trinos*, 250 F.R.D. at 698 ("party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved") (quoting *Speed Trac Technologies, Inc. v. Estes Exp. Lines, Inc.*, No. 8-cv-212, 2008 WL 2309011, *5 (D.Kan. June 3, 2008)); *United Oil Co., Inc. v. Parts Associates, Inc.*, 227 F.R.D. 404, 413 (D.Md. 2005)(burdensomeness objection must be supported with a "formal affidavit").

[20] *N.L.R.B. v. Brown Transport Corp.*, 620 F.Supp. 648, 654 (N.D. Ill. 1985).

[21] LR 7.1(A)(1), N.D. Ga. (emphasis added).

of complying with discovery requests is somehow self-evident. This is false. It is not Plaintiff's fault that Knight has chosen to represent Defendants, whose business dealings are complex, and "[t]he mere size of [their] operation is no excuse for [the] refusal to give information."[22]

Moreover, the equities of the present case demonstrate the flaw in this argument. One expects that judgment debtors who are attempting to hide assets will benefit from aggressively multiplying the number of companies and shells involved in their endeavor, because the greater complexity of their overall operation will impose greater difficulty on their creditors, who must identify specific property that can be attached to satisfy a judgment. It would be perverse if constructing such a byzantine edifice could simultaneously justify closing the doors of discovery to creditors seeking to parse the structure of the debtor's affairs, effectively closing the loop on the underlying fraud.

### E. NO PRIVILEGE DOCTRINE JUSTIFIES NON-DISCLOSURE AS TO PLAINTIFF'S SUBPOENAS

Knight raises three arguments that coalesce around the concept of privilege: (1) there is a special privilege against disclosure of tax and financial records; (2) any communications are covered by attorney client privilege must not be disclosed; and

---

[22] *NLRB v. United Aircraft Corp.*, 200 F.Supp. 48, 51 (D.Conn. 1961), *aff'd mem.*, 300 F.2d 442 (2d Cir.1962).

(3) inquiries into Defendants' funds held by Knight are confidential and protected. These arguments are addressed in turn.

*(i) Financial Documents in Knight's Possession are not Protected from Disclosure*

Plaintiff's subpoena requested, to the extent Knight possesses them, various tax and financial documents regarding Defendants and their affiliates; Knight asserts that a qualified privilege protects against the disclosure of tax returns and financial documents. This argument is entirely derivative of the "tax privilege" assertion of Defendants' relatives,[23] the flaws of which are thoroughly addressed in Plaintiff's brief and cross-motion regarding that filing.

Stated briefly, the qualified privilege for tax returns is a judicially crafted doctrine that has been rejected by the Eleventh Circuit, where the discoverability of tax records turns on simple relevance.[24] Moreover, even in out-of-circuit courts that apply the heightened scrutiny Defendants advocate, tax returns must be disclosed where the requesting party demonstrates a compelling need for their discovery.[25] Courts have consistently found a compelling need in cases where fraudulent transactions or other fraudulent dealings were suspected.[26]

---

[23] *See* Doc. #107 at 8-9.

[24] *E.g., Weber v. Finker*, No. 3:07-mc-27, 2008 WL 1771822 at *8 (M.D. Fla. April 15, 2008) (citing *Shearson Lehman Hutton, Inc. v. Lambros*, 135 F.R.D. 195, 198 (M.D. Fla.1990)) *aff'd*, 2008 WL 2157034 (M.D. Fla. May 20, 2008). Accord *Shearson Lehman Hutton, Inc. v. Lambros*, 135 F.R.D. 195, 198 (M.D. Fla. 1990).

[25] *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190-91 (C.D. Cal. 2006).

[26] *See McGee*, 2012 WL 8281725 at *3 (applying two-step test and upholding disclosure of tax records from various doctors sued for insurance fraud); *State Farm Mut. Auto. Ins. Co. v. CPT*

### *(ii) Attorney Client Privilege has not been Properly Asserted as to Communications and is Repudiated by the Crime-Fraud Exception*

Knight contends that "[t]o the extent that any [] communications may exist, communications between Knight Johnson and its clients are protected by the attorney client privilege."[27] However, "[i]n general, the attorney-client privilege is personal and cannot be asserted by anyone other than the client.[28]" Knight's motion and supporting papers do not include any affidavits or other evidence demonstrating any *client*'s invocation of the privilege. Because "the attorney-client privilege must be asserted by the client," not the attorney, Knight's reliance on the doctrine as grounds for non-production is misplaced.[29]

Moreover, in *In re Grand Jury Subpoena*,[30] the Eleventh Circuit specifically stated: "that an attorney seeking to quash a subpoena must assert the attorney-client privilege on a document-by-document basis."[31] Here, Knight has not done so; therefore, it has improperly asserted the attorney-client privilege.

---

*Med. Servs., P.C.*, 375 F. Supp. 2d 141, 155 (E.D.N.Y. 2005) (ordering production of doctor's tax returns, general ledgers and bank records in RICO action as relevant to the issue of profits and motive where State Farm had alleged medical services were not performed pursuant to medical necessity, but for the defendants' financial gain) *Cf. Powell v. Merrimack Mut. Fire Ins. Co.*, 80 F.R.D. 431, 433 (N.D. Ga. 1978) ("Plaintiff's financial status at the time of the fire is relevant and discoverable.") (holding tax records discoverable as to party suspected of insurance fraud).

[27] Doc. # 108 at 9-10.
[28] *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003) (citing *United States v. Fortna*, 796 F.2d 724, 732 (5th Cir.1986)).
[29] *In re Hendrick*, 56 B.R. 280, 282 (Bankr. M.D. La. 1985).
[30] *In re Grand Jury Subpoena*, 831 F.2d 225 (11th Cir. 1987).
[31] *Id*. at 227 (citing *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981) and *United States v. Roundtree*, 420 F.2d 845 (5th Cir.1969)).

Finally, any privilege should be vitiated under the crime-fraud exception. "The attorney-client privilege does not protect communications made in furtherance of a crime or fraud,"[32] and this exception "applies even when the attorney is completely unaware that his advice is sought in furtherance of an improper purpose."[33] Courts in this Circuit have held that a party who can point to multiple zero-consideration transfers, or suspicious structuring of a homestead so that it is placed beyond the reach of creditors "has at least raised the inference that the transfers may have been fraudulent" and as such "has made a *prima facie* showing sufficient enough to call into play the 'fraud' exception to the attorney-client privilege and is entitled to have those documents which might be construed as evidence of a fraudulent intent produced."[34]

The ample evidence of Defendants' scheme to fraudulently transfer assets, sometimes utilizing corporations associated with the Knight | Johnson firm,[35] would be enough to justify production of attorney-possessed documents even if the attorney-client privilege had been properly asserted.

---

[32] *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987)
[33] *In re Grand Jury Proceedings*, 689 F.2d 1351, 1353 n.2 (11th Cir. 1982) (citing *In re Grand Jury Proceedings*, 680 F.2d 1026, 1028 (5th Cir. 1982)).
[34] *In re Warner*, 87 B.R. 199, 203 (Bankr. M.D. Fla. 1988).
[35] For example, Grady Ridge Investments, Inc. a conduit party to the December 27, 2013 shuttling of a commercial property between Rajesh and Mukesh Patel's corporation and their son/nephew Jay's corporation was organized by Bryan Knight, who is also the agent of service for Grady Ridge. Knight is also the agent for service for at least two more of Defendants' companies, Diplomat CT Hotels LLC, and CT Hotels, LLC. The Grady Ridge transaction is discussed in more detail in Affidavit at ¶.

*(iii) The Attorney-Client Privilege Does not Protect Non-Communicative Information About the Balance of Trust Accounts or Prior Payments*

Knight | Johnson's attempts to apply client privilege to the balances of trust accounts or payments is unavailing. The attorney-client privilege shields legal counsel and guidance, rather than non-advisory facts. A party invoking the privilege must show "(1) a communication between client and counsel that (2) was intended to be kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." [36] "The attorney-client privilege protects disclosure of *communications*—not the underlying facts." [37] Plaintiff is not seeking communications, much less communications containing or seeking legal advice.

Plaintiff's curiosity as to how Defendants—who appear to have divested the entirety of their once-considerable personal fortunes to the point that they no longer maintain bank accounts with more than a few hundred dollars in their own names—somehow have the money to hire experienced legal counsel is well-founded, and as Knight | Johnson has acknowledged in other filings, relevant discovery includes information to help "determine whether [Defendants] fraudulently transferred any assets, whether third part[ies] owe[] [Defendants] money, or whether [a] third party is holding assets or money for [Defendants]."[38]

---

[36] *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (citation omitted).
[37] *ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 57 (W.D.N.Y. 1996).
[38] Doc. #107 at 6.

Moreover, Knight | Johnson is plainly the repository for many documents. In *Pollock v. United States*,[39] the appellate court held that "[w]here the attorney is a mere scrivener or the transaction involves a simple transfer of title to real estate and there is no consultation for legal advice, it has been held that communications to an attorney are not privileged."[40]

### F. As Numerous Courts Have Held, a Judgment-Creditor is Entitled to Information Possessed by an Attorney that will Uncover Fraudulent Transfers or Funds

In light of Rule 69's purpose, to provide an "effective and efficient means of securing the execution of judgments," discovery into assets belonging to a judgment-creditor but held by another, like an attorney, is permitted.[41] "A claim of privilege cannot be used as a means to conceal assets to prevent execution of judgment."[42]

The attorney-client privilege is not a license to stonewall any request for information regarding a client,[43] and post-judgment discovery regarding a debtors'

---

[39] *Pollock v. United States*, 202 F.2d 281, 286 (5th Cir.), cert. denied, 345 U.S. 993, 73 S. Ct. 1133, 97 L. Ed. 1401 (1953).
[40] *Id*. at 286.
[41] *See Rouse Const. Intern., Inc. v. Rouse Const. Corp.*, 680 F.2d 743 (11th Cir. 1982).
[42] *Ranney-Brown Distributors, Inc. v. E. T. Barwick Indus., Inc.*, 75 F.R.D. 3, 5 (S.D. Ohio 1977).
[43] *Gov't Guar. Fund of Republic of Finland v. Hyatt Corp.*, 177 F.R.D. 336, 343 (D.V.I. 1997).

assets cannot be refused on the basis of broad, undifferentiated invocations of privilege.[44]

Respectfully submitted this 6th Day of November, 2014.

| | |
|---|---|
| ____/s/ Mazin A. Sbaiti_____ | ____/s/ Adam Webb_____ |
| Mazin A. Sbaiti (Pro Hac Vice) | Adam Webb |
| **Steckler LLP** | **Webb Klase & Lemond LLP** |
| Two Hillcrest Green | 1900 The Exchange, S.E. |
| 12720 Hillcrest Rd. | Suite 480 |
| Suite 1045 | Atlanta, Georgia 30339 |
| Dallas, Texas 75230 | T: (770) 444-9325 |
| T: (972) 387-4040 | F: (770) 444-0271 |
| F: (972) 853-4367 | E: Adam@WebbLLC.com |
| E: Mazin@Stecklerlaw.com | |
| E: Kim@StecklerLaw.com | |
| ***Counsel for Plaintiff State Bank of Texas*** | |

---

[44] *See Monticello Tobacco Co., Inc. v. American Tobacco Co.*, 12 F.R.D. 344 (S.D.N.Y.1952) (no attorney client privilege with respect to questions relating to attorney's possession of property held for the account of the judgment debtor); *Cf. G-Fours, Inc. v. Miele*, 496 F.2d 809, 812 (2d Cir. 1974) ("inquiries [] into such matters as the existence and location of [judgment debtor's] bank accounts and his ownership and transfer of property would not seem to invade the marital privilege").