## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **STATE BANK OF TEXAS,** | § | |
| | § | |
| *Plaintiff and Judgment Creditor*, | § | |
| | § | |
| vs. | § | |
| | § | |
| **RAJESH PATEL** *and* **MUKESH PATEL,** | § | **Civil Action No. 1:09-cv-01494-WBH** |
| | § | |
| *Judgment Debtors* and *Defendants* | § | |
| | § | |
| | § | |

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITIONS, AND MOTION FOR SANCTIONS

# I.

## <u>INTRODUCTION</u>

This Court found brothers and real estate investors Rajesh and Mukesh Patel liable for a multimillion-dollar judgment that they have steadfastly refused to pay. After substantial efforts to peaceably collect the on the judgment, State Bank of Texas has commenced ancillary proceedings in this Court in the hopes of breaking through Defendants' obstructionist tactics. However, Defendants have used their families and a network of shell companies to hide assets and mask transfers of 100% of their fortunes to their relatives.

The available evidence reveals pieces of their fraudulent scheme, for example:

- Defendants have transferred their multimillion-dollar homes to their wives, for no consideration, yet continued to reside in them;[1]

- Defendants have transferred their ownership of businesses and associated contracts and rights to payment to relatives, for no consideration, but, upon information and belief, continuing to run them;[2]

- Defendants have set up strawman companies to shuttle title to multimillion-dollar commercial properties into the hands of their children for sham consideration; and[3]

- Defendants have liquidated their personal bank accounts and transferred large personal property items to their wives and other insiders.[4]

---

[1] See Sbaiti Declaration, 11/6/2014
[2] Id.
[3] Id.
[4] See Sbaiti Declaration, 11/6/2014 attached.

The cumulative aim of Defendants' fraudulent transfer scheme is manifest: to make the Patels appear "judgment proof" while in reality enjoying the same personal luxuries as before, and to vexatious multiply the costs of collection.

If that were not enough, Rajesh Patel was recently indicted for racketeering and defrauding investors in his real estate ventures by federal prosecutors in the Middle District of Tennessee for using sham shell companies and strawman entities to bilk investors out of nearly a million dollars.

Throughout August 2014, the Patel brothers were served deposition notices and document requests which they patently ignored. Despite promises from their lawyer, Mr. Knight, they have never appeared for deposition, and have produced only a single box of documents. Defendants relatives and various companies they own, and their law firm, Knight | Johnson, were also subpoenaed by State Bank of Texas for their documents in August 2014, and these too were ignored.

After months of delay, a flurry of late-filed motions to quash were brought before this Court. The three total motions represent three different groups, companies owned (generally) by Defendants' relatives whose motion was brought by Defendants themselves ("the Companies"), Doc. #106; Defendants' relatives ("third-party-movants"), Doc. #107; and the law firm representing both the Defendants and various of their relatives in this case ("Knight | Johnson" or "Knight"), Doc. 107. Collectively, the parties behind all three motions are referred

to as "the Movants." For the convenience of the Court, these filings are grouped and addressed together, alongside Plaintiff's Motion to Compel.

It is hardwired law that under Rule 69(a)(2), a judgment creditor plaintiff like State Bank of Texas is entitled to broad discovery "from *any person*, including the judgment debtor" (emphasis added). The term "[a]ny person" thus includes, and has always included, parties other than the judgment debtor whom the creditor reasonably believes would have relevant information, or might have information that could in turn lead to relevant information.

Here, discovery into the labyrinthine matrix of companies and transactions Defendants and their relatives have created is both relevant and necessary to vindicate this Court's judgment. Moreover, not only do the objections come way too late, but the Patel brothers do not even have standing to raise them. The motion to quash is thus patently frivolous. Accordingly, the Companies should be compelled to comply with the subpoenas and ordered to pay sanctions and attorneys' fees, and Defendants' motion to quash the subpoenas directed to the Companies should be denied.

**II.**

# THIS COURT SHOULD COMPEL ALL REQUESTED DISCOVERY BE PRODUCED WITHIN 30 DAYS

### A. THE DISCOVERY SOUGHT IS NECESSARY AND RELEVANT

As further explicated on a request by request basis in Exhibit A, the discovery sought is relevant to these proceeding and collecting the judgment which is now approaching $10 million. The documents are relevant to discovering:

- Where Rajesh and Mukesh's money went;

- Where their money comes from;

- Where the property they used to own went and whether it was fraudulently transferred;

- What business interests they own;

- How property that was owned by businesses they used to own now is owned by family members;

- Where the compensation for their transactions and services went;

- Where their money/income comes from;

- Where they have strawman ownership in businesses or properties;

- Establishing that family members and affiliates are really just alter egos in a scheme to defraud Plaintiff in collecting its judgment.

These are common sense things. Yet, due to the size of the matrix of overlapping ownership among some 80 corporate entities that have been located to date, this is no easy task.

## B. POST-JUDGMENT DISCOVERY IS BROADLY AVAILABLE AND LIBERALLY CONSTRUED

Federal Rule of Civil Procedure 69 governs discovery in the post-judgment arena where, as here, liability has been established and the focus shifted to vindicating a court's judgment award. Rule 69 expressly authorizes discovery from "'*any* person,' not merely the judgment debtor."[5] The controlling precedent in this circuit is that this "rule should be broadly and liberally" applied[6] to provide judgment-creditors an "effective and efficient means of securing the execution of judgments."[7] Thus, a party has great latitude to obtain discovery as to *any* non-privileged, relevant matter.[8] Accordingly, "[t]he scope of post-judgment discovery is very broad to permit a judgment creditor to discover assets upon which execution may be made."[9]

The Federal Rules explicitly acknowledged the availability of third party subpoenas, stating: "[a]s provided in Rule 45, a nonparty may be compelled to

---

[5] *See British Int'l Ins. Co., Ltd. V. Seguros La Republica*, 200 F.R.D. 586, 589 (W.D. Tex. 2000).
[6] *See U.S. v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967) (citing Moore et al., 7 Moore, Federal Practice Rule 69.05(1), pp. 2420-23 (1966)). *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting all Fifth Circuit decisions prior to October 1, 1981 as binding precedent in the Eleventh Circuit).
[7] *See Rouse Const. Intern., Inc. v. Rouse Const. Corp.*, 680 F.2d 743 (11th Cir. 1982).
[8] Fed. R. Civ. P. 26(b)(1).
[9] *Federal Deposit Insurance Corp. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995). *Cf. Heathman v. U.S. Dist. Court*, 503 F.2d 1032, 1035 (9th Cir. 1974) ("relevance" language in the Federal Rules "has a very broad meaning").

produce documents and tangible things…."[10] "The factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena."[11] These factors are generally the same, regardless of whether the target of a subpoena is a party or non-party.[12]

"[T]he party resisting discovery[] has the burden to demonstrate specifically how the request is unreasonable or not relevant."[13] Where a protective order is sought, "[t]he party seeking a protective order has the burden to demonstrate good cause, and must make a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements supporting the need for a protective order."[14]

### C. HERE, THE SUBPOENAS SEEK RELEVANT INFORMATION INTO FRAUDULENT TRANSFERS INVOLVING DEFENDANTS, THEIR RELATIVES, AND BUSINESSES NOMINALLY OWNED BY THEM

---

[10] Fed. R. Civ. P. 34(c).

[11] *Heat and Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986).

[12] *Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008); *McCoy v. Southwest Airlines Co.*, 211 F.R.D. 381, 384 (C.D. Cal. 2002).

[13] *Adelman v. Boy Scouts of America*, 276 F.R.D. 681, 689 (S.D. Fla. 2011). *Accord McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990); *Desrosiers v. MAG Indus. Automation Systems*, LLC, 675 F.Supp. 2d 598, 601 (D. Md. 2009) ("The burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules.").

[14] *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005) (internal quotation marks and citation omitted).

Defendants argue that discovery of the affairs of their relatives and the Companies' is irrelevant, all the while conceding that the lynchpin for relevance is the possibility of fraudulent transfers. Rule 26 provides that discovery is permissible into evidence "relevant" to the fraudulent transfers, or into information that is "reasonably calculated to lead to the discovery of" relevant evidence concerning same.[15] Contrary to their protests, the tangled intra-familial network of companies and prior dealings strongly indicate that the subpoenas will uncover relevant evidence of fraudulent transfers.

### D. PROPERTY TRANSFERS AMONG FAMILY MEMBERS AND AFFILIATED ENTITIES ARE THE HALLMARKS OF FRAUDULENT CONVEYANCES

The purpose of the fraudulent transfers statute "is to prevent insolvent debtors from placing their property beyond the reach of their creditors while at the same time enjoying the benefits thereof."[16] Accordingly, when a judgment-debtor simply refuses to pay what a court says is owed, dealings with family members must be strictly scrutinized because in "intrafamilial transfers[] the relationship of the parties encourages collusion and concealment" to avoid a court's judgment.[17]

Extensive discovery "is allowed with regard to third parties with close ties to the judgment debtor"[18] and "it should be beyond question that a judgment creditor"

---

[15] Fed. R. Civ. P. 26(b).
[16] *United States v. Mazzara*, 530 F.Supp. 1380, 1383 (D.N.J. 1982).
[17] *Gaddis v. Allison*, 234 B.R. 805, 813 (D. Kan. 1999).
[18] 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3014 (2d ed. 2007)

may investigate "asset and financial information relating to the debtor's spouse or other family members" through post-judgment discovery.[19] Courts have routinely required that discovery be "permitted against a non-party where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them."[20]

Standing alone, Defendants' connection to the third-party-movants—their wives, children, etc.—and the Companies they own justifies post-judgment inquiry, "as this close relationship makes [their] financial situation relevant."[21]

### E. NUMEROUS INDICIA OF FRAUD SHOW DEFENDANTS HAVE ALREADY ENGAGED IN SUSPECT TRANSFERS WITH THEIR FAMILY AND THE COMPANIES

But the family connections do not stand alone. A mountain of evidence points to Defendants' family and their Companies involvement in fraudulent transfers, for example:

- Contrary to the assertion that they have *no* relationship to Defendants, several of the Companies were incorporated by, and are still owned by the original *Defendants*, for example: ***RM Hotels, Inc***., and ***Diplomat PR Hotels, LLC***

- Some of the Companies were incorporated by Defendants and run by them for many years, but were hastily transferred to their wives and

---

[19] *National Union Fire Ins. Co. v. Van Waeyenberghe*,148 F.R.D. 256, 256-257(N.D. Ind.1993)

[20] *Magnaleasing Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977).

[21] *U.S. v. Thurner*, No. 00-cv-82, 2007 WL 4171516 at *2 (E.D. Wisc. Nov. 20, 2007) ("even if [co-defendant] were absolved of tax liability, she would still be subject to discovery based on her status as the spouse of [defendant] Scott Thurner, as this close relationship makes her financial situation relevant.").

siblings, in some cases just three months after State Bank of Texas won its Judgment in this Court, for example: ***Diplomat Hospitality, LLC***

- And some of the Companies participated in suspect transfers of multimillion-dollar commercial real estate properties, for example: ***Hapeville Capital***, Jay Patel's company was the ultimate recipient of a large restaurant property that was transferred from Defendants' LLC, utilizing a strawman intermediary created specifically for that transaction

- Moreover, Defendants have also transferred their million-dollar personal homes to their respective wives, for no consideration, while continuing to reside in them, and transferred other residential properties to relatives for no consideration;

- Defendants have liquidated their personal bank accounts to the point that they don't hold more than a few hundred dollars in checking accounts that bear their names

Adding smoke to this fire, Rajesh Patel was recently indicted by federal prosecutors in Tennessee for defrauding real estate investors.[22]

That this many indicia of fraud, spanning this many participants were uncovered by Plaintiff's modest examination of public records clearly indicates the need for full discovery into the third-party-movants' and Company affairs. Several manifestly questionable transactions are sufficient grounds to conclude that the "assertion that [defendants] engaged in fraudulent conveyances is meritorious,"

---

[22] *See United States v. R.C. Patel*, No. 314-cr-00082 (M.D. Tenn. May 14, 2014) (Doc. #1).

necessitating that Plaintiff be allowed to investigate whether these "could merely be the tip of the proverbial iceberg."[23]

Whether these numerous suspect transactions represent a situation where "the confluence of several [badges of fraud] constitutes conclusive evidence of an actual intent to defraud,"[24] they "*at least* raise[s] the inference that the transfers may have been fraudulent,"[25] and "disclosure concerning the assets of a non-party" is required where there is "at least some demonstration of concealed or fraudulent transfers or alterego relationship with the judgment debtor."[26] If the situation were otherwise, a defendant could avail himself of the full protections of a judicial inquiry into a controversy's merits and, if the results were not to his liking, still inflict a take-nothing result on his adversary so long as his relatives were willing to participate in judgment-proofing transfers of assets.

Conversely, although Defendants pledged to "go through each of the 48 [companies] that have been subpoenaed and explain ownership and relationship to

---

[23] *Greenstone Farm Credit Services, ACA v. Ort*, No. 10-cv-1175, 2012 WL 827199 at *1 (E.D. Wisc. Mar. 9, 2012).
[24] *In re XYZ Options, Inc.*, 154 F.3d 1262, 1272 n.17 (11th Cir. 1998).
[25] *In re Warner*, 87 B.R. 199, 203 (Bankr. M.D. Fla. 1988) (requiring third party disclosure and overriding the attorney-client privilege where debtor had created several well-funded trusts for family members and structured a purportedly exempt million-dollar house with the assistance of his wife).
[26] *Uniden Corp. of America v. Duce Trading Co., Ltd.*, No. 89-cv-0878E, 1993 WL 286102 at *1 (W.D.N.Y. July 19, 1993). *Accord Blaw Knox Corp. v. AMR Industries, Inc.*, 130 F.R.D. 400, 403 (E.D.Wis.1990); *Strick Corp. v. Thai Teak Products Company, Ltd.*, 493 F.Supp. 1210, 1217–1218 (E.D.Pa.1980); *Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331, 333–335 (E.D.Pa.1974).

the debtors,"[27] no actual discussion, analysis, or exhibits follow. In fact, their brief does not mention a single one of the Companies it purports to exonerate from any connection to Defendants by name, much less show that inquiry into their affairs is not relevant. And while Plaintiff would welcome such a showing, it is not required to rely on Defendants' word solely—such representations must also include substantiation of money flows and beneficial interests.

## III.

## THIS COURT SHOULD COMPEL DEPOSITIONS OCCUR IN THE NEXT 30 DAYS

On August 10, 2014, Defendants Rajesh and Mukesh Patel were noticed for deposition, as well as Shama Patel, Hasmita Patel, Rishi Patel, and Jay Patel. None of them showed up for their appointed depositions. What is worse, despite being represented by counsel Bryan Knight, who promised to set their depositions, they have refused to accommodate any scheduled deposition schedule.

The failure to object or seek a protective order prior to a duly noticed deposition is grounds for sanctions, as we discuss below.

## IV.

## PLAINTIFF'S MOTION FOR SANCTIONS

---

[27] Doc. #106 at 8.

The dilatory conduct and vexatious behavior associated with this dispute justify an award of attorney's fees as a sanction against both Defendants and their attorney. Rule 37(a)(5)(A) provides that when a party forces an adversary to file to a motion to compel that is ultimately granted, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.[28] This mandate is subject to only a few exceptions, none of which apply here. [29] Additionally, a party that simply disregards its obligation to schedule and appear for noticed depositions is subject to sanctions.[30]

In addition to the district court's inherent power "to impose sanctions on uncooperative litigants," including counsel[31] 28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and

---

[28] Fed. R. Civ. P. 37(a)(5)(A)(emphasis added).

[29] Fed. R. Civ. P. 37(a)(5)(A)(i) does not require a fee award where the moving party did not work in good faith to obtain discovery without court intervention. Here, Plaintiff conferred with Knight | Johnson in good faith but to no avail. *See* Declaration. Fed. R. Civ. P. 37(a)(5)(A)(ii) does not require a fee award where the moving party was "substantially justified," in its position. But this exception normally applies where the resisting party tests a position of first impression. Here, Movants' arguments have been thoroughly rejected by the courts in this circuit. Finally, Fed. R. Civ. P. 37(a)(5)(A)(iii) provides a residual exception to a fee award if the circumstances would make it unjust. Plaintiff is aware of no special circumstances in this case.

[30] *In re Steffen*, 433 B.R. 879, 880 (M.D. Fla. 2010) (sanctioning party that failed to schedule or appear for depositions); *Kelly v. Old Dominion Freight Line, Inc.*, 376 F. App'x 909 (11th Cir. April 27, 2010) (*per curiam*) (upholding district court sanctions for failing to appear for deposition).

[31] *Phillips v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993).

13

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[32]

"Under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation."[33] These concerns are heightened in the present context: Defendants and their associates are attempting to put their considerable assets out of reach to thwart this Court's Judgment, and they are aided by each detention of inquiry into the true issues at hand. Sanctions are appropriate "to deter an attorney from intentionally and unnecessarily delaying judicial proceedings,"[34] and to "ensur[e] the disobedient party does not benefit from non-compliance."[35] The dilatory tactics of opposing counsel are evident in that he filed not one, but *three* untimely motions to quash, each over a month after a response was due, behavior courts have relied on in imposing § 1927 sanctions.[36]

Moreover, an "attorney's conduct [that] is so egregious that it is tantamount to bad faith"[37] will justify sanctions, for example, where he presents briefs "so lacking

---

[32] 28 U.S.C. § 1927.
[33] *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).
[34] *LaSalle Nat'l Bank v. First Conn. Holding Group, LLC*, 287 F.3d 279, 288 (3d. Cir. 2002).
[35] *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (citations omitted).
[36] *Goode v. Wild Wing Cafe*, ---Fed.Appx.---, 2014 WL 4960424 at *3 (11th Cir. Oct. 6, 2014) (discussing attorney's filing motions to strike, for summary judgment, and to produce discovery one to three months after the appropriate deadline had passed).
[37] *Norelus v. Denny's, Inc*., 628 F.3d 1270, 1282 (11th Cir.2010).

in legal or probative value that no reasonable attorney would have filed [them]."[38] Defendants' papers drift into this territory.

Defendants' motion cited a total of two boilerplate cases, for the uncontroversial proposition that parties are not entitled to discovery of irrelevant materials,[39] and the platitude that discovery is not "a fishing expedition."[40] But the motion cites no cases addressing third-party discovery generally or within the context of fraudulent transfer claims, and makes no attempt to compare factual determinations and legal holdings of any authorities to the circumstances here.

On that same score, Defendants' take up on behalf of the rights of 48 Companies, while effectively "plead[ing] themselves out of court with respect to" standing by repeatedly *denying* any association with the entities whose rights they attempted to assert.[41] Their brief did not address Eleventh Circuit precedent regarding standing or their personal right or privilege in documents belonging to the Companies.

Finally, Defendants' motion vaguely argues a number of practical and factually demonstrable issues regarding how long it would take the Companies to comply with discovery and what expense and inconvenience they would suffer.

---

[38] *Goode v. Wild Wing Cafe*, No. 1:11-cv-1337, 2013 WL 5567968 at *3 (N.D. Ga. Oct. 9, 2013).
[39] *Templeton v. Pom Wonderful LLC*, No. 413-mc-019, 2013 WL 5444939 (S.D. Ga. Sep. 30, 2013) cited Doc. #106 at 7.
[40] Alig-Mielcarek v. Jackson, 286 F.R.D. 521, 525 (N.D. Ga. 2012) cited Doc. #106 at 7.
[41] *Matter of Feldberg*, 862 F.2d 622, 629 (7th Cir. 1988)

Defendants took this position with no affidavits or factual proof of any kind, despite this District's clear instructions in its Local Rules that briefs reliant upon allegations of fact must attach supporting affidavits to their memorandum of law, along with numerous legal authorities holding the same.

In short, Defendants papers were deficient to the point of evincing a purpose to delay or multiply the proceedings rather than zealous advocacy through passable argument. Plaintiff should be awarded fees and expenses associated with opposing Defendants' frivolous motion.

## V.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that the Court compel the production now at issue, order Defendants to show cause why they failed to produce documents responsive to Plaintiff's duly issued subpoenas or object to them in a timely fashion, and for appropriate sanctions such as reasonable attorney's fees and costs under Rule 37(b)(2)(C) and 28 U.S.C. § 192.